NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0954n.06

No. 13-3048

**FILED**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**NOV 0 5 2013**

**DEBORAH S. HUNT, Clerk**

SAM HAN,

    **Plaintiff-Appellant,**

v.

UNIVERSITY OF DAYTON, ET AL.,

    **Defendants-Appellees.**

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

_____/

**BEFORE:** MERRITT, CLAY, and STAFFORD, Circuit Judges.*

**CLAY, Circuit Judge.** Plaintiff Sam Han, an Asian-American male, appeals the district court's order granting Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted. He alleges that the University of Dayton terminated his employment as Assistant Professor of Law at the University of Dayton School of Law on May 2012 as a result of race and gender discrimination in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Ohio Rev. Code §4112.02. For the following reasons, we **AFFIRM** the district court order.

---

*The Honorable William H. Stafford Jr., Senior District Judge for the Northern District of Florida, sitting by designation.

## BACKGROUND

### A.    Procedural History

Plaintiff Sam Han initially filed a complaint in the Court of Common Pleas of Montgomery County, Ohio in 2011 alleging state law claims for breach of contract, promissory estoppel, fraud, tortious interference with contract, reliance damages, respondeat superior, bad faith, attorneys' fees and punitive damages. Defendants moved to dismiss and filed a motion for summary judgment. Plaintiff responded by filing an amended complaint. Defendants then filed a motion to dismiss the amended complaint and a motion for summary judgment.

Plaintiff then filed a new lawsuit in the same state court and sought to have it consolidated with the already pending lawsuit. The new lawsuit was against the same Defendants named in the original lawsuit; however, it included nothing but federal and state law discrimination claims. Before Plaintiff's request for consolidation could be ruled upon by the state court, Defendants removed the new lawsuit to the Southern District of Ohio. Plaintiff then amended the complaint that was removed to include all of the state law claims that were in the initial complaint.

Defendants then moved to dismiss Plaintiff's Amended Complaint. The district court granted Plaintiff's Motion for Leave To File a Second Amended Complain. It was Plaintiff's Second Amended Complaint that was adjudicated before the district court and is now appealed to this Court. In the Second Amended Complaint, Plaintiff alleged race and gender discrimination in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and Ohio Rev. Code §4112.02.

The district court granted Defendants' Motion To Dismiss, holding that Plaintiff's Title VII claims were time-barred and dismissed his 42 U.S.C. § 1981 and Ohio Rev. Code § 4112.02 claims alleging race and gender discrimination for failure to state a claim in accordance with *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (Pls.' Br. at 17.) The only claims remaining in Plaintiff's complaint after the district court's ruling were the state law claims, over which the court declined to exercise jurisdiction since there is a pending case on the same issues being adjudicated in state court.

## B.    Factual Background

Because this appeal is taken from an order granting a motion to dismiss, the facts as set forth in the complaint are taken as true for purposes of this appeal. Plaintiff, a 42-year-old Asian-American male, was hired in August 2008 by the University of Dayton as a non-tenured faculty member to teach at the School of Law in the area of patent law on annual teaching contracts until May of 2011. Plaintiff's contract with the University of Dayton incorporated the University's Faculty Policy & Governance Handbook (the "Faculty Handbook") by reference. As a non-tenured faculty member, Plaintiff was subject to the Promotion, Retention and Tenure ("PRT") Committee process. The University of Dayton School of Law appointed six faculty members (the "PRT Committee") to oversee Plaintiff's professional development. The primary purpose of the PRT Committee, according to the Faculty Handbook, was to insure Plaintiff's professional development. *Han v. Univ. of Dayton*, 3:12-CV-140, 2012 WL 6676961 (S.D. Ohio Dec. 21, 2012).

Plaintiff received accolades from his peers and outstanding evaluations from his students, published articles in law journals, and also spoke at numerous conferences and events. Nonetheless,

3

Plaintiff was given a poor evaluation by the PRT Committee on April 8, 2011, and based on that evaluation, his contract with the University for the 2012 year was not renewed. Plaintiff asserts that he was qualified for his position even though he was given a poor evaluation. In addition, a white male was hired as an adjunct professor to teach one of his patent law classes. Plaintiff now alleges that his employment was terminated as a result of race and gender discrimination in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and Ohio Rev. Code §4112.02.

## DISCUSSION

### A. Standard of Review

This Court reviews *de novo* a district court's grant of a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Gunasekera v. Irwin*, 551 F.3d 461, 465–66 (6th Cir. 2009). Under Rule 12(b)(6), this Court "accept[s] all the Plaintiffs' factual allegations as true and construe[s] the complaint in the light most favorable to the Plaintiffs." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005); accord *Gunasekera* 551 F.3d at 466. "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

To properly state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); accord *Casias* at 435. A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports

the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief. *Twombly*, 550 U.S. at 561–64.

Although the complaint must be liberally construed in favor of the party opposing the motion to dismiss, the Court should not accept conclusions of law or unwarranted inferences of fact cast in form of factual allegations. *Id.* at 555. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory. *Twombly*, 550 U.S. at 562.

## B. Plaintiff's claims fail to satisfy the plausibility requirement

In addressing cases arising from a district court's grant of a 12(b)(6) motion to dismiss, this Court uses the plausibility pleading standard set forth in *Twombly* and *Iqbal*. *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012). This pleading standard requires that Plaintiff's complaint allege sufficient facts to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. In this case, Plaintiff is alleging that his contract with the University of Dayton was not renewed because of race and gender discrimination by the PRT committee when it gave him a poor evaluation that ultimately led to his contract not being renewed.

A cause of action under § 1981 may be brought when a plaintiff has suffered an injury flowing from the racially-motivated breach of his contractual relationship with another party. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006); *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 142 (2000) (courts evaluating § 1981 claims of employer discrimination must assess whether employer intentionally discriminated against plaintiff). The district court properly granted Defendant's motion to dismiss because Plaintiff's complaint does not plead sufficient facts to state claims of race and gender discrimination that are plausible on its face. A complaint that allows the court to infer only a "mere possibility of misconduct," is insufficient to "show" that the complainant is entitled to relief and fails to meet the pleading requirements of Rule 8. *Iqbal*, 556 U.S. at 679.

Unlike the technical pleading requirements of the past, the Supreme Court established a "plausibility" standard in *Twombly* and *Iqbal* for assessing whether a complaint's factual allegations support its legal conclusions, and that standard applies to causation in discrimination claims. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 612 (6th Cir. 2008) (affirming dismissal of Fair Housing Act claim where alleged facts did not support plausible inference of intentional discrimination); *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (affirming dismissal of religious discrimination claim where plaintiff failed to allege facts plausibly linking her termination to religious beliefs).

Thus, although Plaintiff's complaint need not present "detailed factual allegations," it must allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could draw the reasonable inference that Defendants discriminated against Plaintiff with respect to his race and gender. *See Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012); *Iqbal*, 556 U.S. at 678. However, Plaintiff's complaint is devoid of facts that would allow the Court to draw this inference.

Plaintiff provides no facts that would allow a court to infer that the adverse employment action at issue was a result of his race or gender. Instead, his complaint lists conclusory allegations of discrimination and fails to provide, as required by *Twombly* and *Iqbal*, the "sufficient factual matter" necessary to create an inference of discrimination.

Certainly, Plaintiff pleads his own race and gender, and alleges that, as a result of his race and gender, he was given a bad evaluation by the PRT committee and then ultimately fired. However, Plaintiff alleges no set of facts, beyond these bare and conclusory assertions, from which a reasonable person could infer how his race or gender factored into the University's decisions regarding his employment or caused him to lose his job, as opposed to any other, non-discriminatory basis for decisions regarding his employment. The Court is therefore left to infer that the University's decision-making regarding Plaintiff's employment was discriminatory simply based on the fact that he is a man, or that he is Asian-American, or both.

Plaintiff alleges that a white male was hired as an adjunct professor to teach one of his patent law classes after his contract was not renewed. However, hiring an adjunct to teach one class is not a replacement hire for a tenure-track professor teaching several classes. Plaintiff also makes several allegations regarding how he was treated by the PRT committee. His allegations regarding how this treatment constitutes an indication of being treated less favorably than a similarly situated non-male, non-Asian-American fail to provide the kind of specific facts necessary to make his discrimination claims plausible.

This Court is not required to accept inferences drawn by Plaintiff if those inferences are unsupported by the facts alleged in the complaint. *See Keys*, 684 F.3d at 610; *Iqbal*, 556 U.S. at 678.

Further, Plaintiff's allegation of gender discrimination is especially weak given the fact that there were both men and women on the PRT committee and he was eventually replaced in one of his classes by a male. Plaintiff concludes that he was treated less-favorably than non-Asian-American employees and was treated less-favorably than other similarly-situated female employees, but he has offered no specifics regarding who those employees were or how they were treated differently.

Plaintiff argues that simply because he was good at his job and was an Asian-American male, he is entitled to a reasonable inference of race and gender discrimination after the University failed to renew his contract. The Supreme Court has stated that factual allegations must do more than create speculation or suspicion; they must show entitlement to relief. *Twombly*, 550 U.S. at 553–54. Plaintiff's allegations simply lack the factual bases necessary to show entitlement to relief for race and gender discrimination.

In order to plead facts sufficient to state a claim of race and gender discrimination that is plausible on its face, the complaint must do more than infer only a "mere possibility of misconduct," it must "show" that the complainant is entitled to relief. *Id.* In sum, while Plaintiff's employment may have been terminated against his wishes, his complaint does not plausibly show that the termination of his employment, or any other adverse employment decision to which he may have been subjected, was a result of discrimination based upon his race or his gender.

## C.    Plaintiff's claims were time-barred

Plaintiffs must typically file a timely discrimination charge with the Equal Employment Opportunity Commission ("EEOC") in order to bring a Title VII lawsuit. *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999). Pursuant to the statutory

language of Title VII, the applicable statute of limitations begins to run from the date of "the alleged unlawful employment practice," 42 U.S.C. § 2000e-5(e)(1), and a claimant is afforded 300 days from that day to file his claim of discrimination. While neither party disputes that the 300-day period of limitations applies to this case, the parties disagree on when the 300-day period should begin to run.

Defendants argue that the 300-day period should begin on May 11, 2011, the date when Plaintiff received notice that his contract would not be renewed by the University. Plaintiff, on the other hand, argues that there was further discrimination after he was given notice on May 11, 2011 that his contract would not be renewed, thus entitling him to a later start date of the 300-day period. In *EEOC v. United Parcel Service, Inc.*, 249 F. 3d 557 (6th Cir. 2001), this Court stated that "[t]he United States Supreme Court has held that the limitations period does not begin to run on a claim for employment discrimination until an employer makes and communicates a final decision to the employee. Once the employee is aware or reasonably should be aware of the employer's decision, the limitations period commences." *Id.* at 561–62 (citation omitted).

*United Parcel Service* makes clear that the starting date for the 300-day limitations period occurs when the plaintiff learns of the employment decision itself, not when the plaintiff learns that the employment decision may have been discriminatorily motivated. *Amini v. Oberlin Coll.*, 259 F.3d 493, 499 (6th Cir. 2001). Thus, the district court was correct in holding that the 300-day limitation began on May 11, 2011, when management communicated its final decision to Plaintiff and Plaintiff was made aware that his contract with the University would not be renewed.

The district court held that Plaintiff's March 23, 2012 EEOC Charge, filed more than 300 days after the limitations period began, was untimely as a matter of law, and thereby created a statutory bar to his Title VII claims. The district court found that Exhibit W, the only exhibit attached to Plaintiff's Second Amended Complaint that might be deemed to constitute the prerequisite written charge of discrimination required to be timely filed with EEOC, was dated March 23, 2012, and was found by EEOC to be untimely. As a result, the district court held that Plaintiff's Title VII claims were time-barred because they were filed more than 300 days after the May 11, 2011 date when the limitations period began.

Plaintiff contends in his Second Amended Complaint that he allegedly filed an earlier charge with the EEOC on February 21, 2012, and therefore asks the district court to ignore the filing date on Exhibit W and to instead consider another document that was not attached to or referenced in any of his three Complaints below. Because the district court credited the filing date on Exhibit W rather than the aforementioned February letter, Plaintiff argues that the district court failed to draw all reasonable inferences in favor of the plaintiff. Plaintiff is once again mistaken.

Under Rule 12(b)(6), this Court "accept[s] all the Plaintiffs' factual allegations as true and construe[s] the complaint in the light most favorable to the Plaintiffs." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). However, the Court, in using its "judicial experience and common sense," should not accept unwarranted inferences of facts cast in form of factual allegations. See *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Keys*, 684 F.3d at 610.

In this case, Plaintiff asks the district court to disregard Exhibit W, which was found by the EEOC to be an untimely charge of Title VII violations, in favor of a letter he alleges only in his

10

Second Amended Complaint, which set forth his charge of race and gender discrimination on February 21, 2012. The district court correctly found that there were no plausible facts to indicate that Plaintiff filed his Title VII claims with the EEOC before the 300-day limitations period ended. On the contrary, the only plausible facts indicated that Plaintiff filed his claims with the EEOC after the 300-day limitations period ended.

### D.   Claims were properly dismissed against the individual defendants

The district court dismissed Plaintiff's claims against the individual defendants because McGreal was not the Dean when the alleged discrimination took place, and because Title VII and Ohio Rev. Code § 4112.02 do not provide liability of individuals who are not employers or supervisors. Plaintiff argues that the district court erred in dismissing the claims against the individual defendants who were members of the PRT committee and Dean McGreal.

Title VII does not allow for liability on the part of any person or entity other than Plaintiff's "employer." And according to this Court, under 42 U.S.C. § 2000e, an "employer" does not include the "supervisors," "managers," or "co-workers" of a plaintiff. *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404 (6th Cir. 1997). For this reason, although Plaintiff's Complaint and Amended Complaints each explicitly asserted Title VII claims against members of the PRT committee, Plaintiff now acknowledges, by not disputing the district court's holding on this matter, that he has no Title VII claims against the individual defendants.

By contrast, Ohio Rev. Code § 4112.02 has been interpreted to allow "employer" liability for discrimination attached to Plaintiff's supervisors or managers. *Griffin v. Finkbeiner*, 689 F.3d 584, 600 (6th Cir. 2012). Thus, the main issue before this Court is whether the members of the PRT

11

committee were Plaintiff's "supervisors" or "managers" within the meaning of the statute, or whether they were his "co-workers." If they are simply Plaintiff's "co-workers," then even under Ohio Rev. Code § 4112.02, the individual defendants could not be held liable.

According to the Faculty Handbook, the primary purpose of the members of the PRT committee was to facilitate Plaintiff's professional development. *Han v. Univ. of Dayton*, 3:12-CV-140, 2012 WL 6676961 (S.D. Ohio Dec. 21, 2012). The members of the PRT Committee did not have authority over Plaintiff's teaching or writing, they could not give him orders that he had to obey, and they did not have ultimate authority over whether or not he would be retained by University. Since members of the PRT committee were his colleagues or co-workers and not his supervisors or managers, the district court did not err when it dismissed Plaintiff's claims against the individual defendants.

In addition, the district court also did not err when it dismissed Plaintiff's claims against Defendant McGreal. McGreal, the current Dean of the School of Law, was hired in June 2011 and was not an employee of the University before or during the time the University decided not to renew Plaintiff's contract. Since McGreal was not involved in the decision not to renew Plaintiff's contract, he cannot be held liable under Ohio Rev. Code § 4112.02.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court order.